**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary McCormack, et al., | No. CV-12-02547-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Safeway Stores Incorporated, | |
| Defendant. | |

Defendant Safeway Stores, Inc. ("Safeway") has filed a motion for summary judgment. Doc. 59. The motion is fully briefed. The Court will grant Defendant's motion.[1]

**I.   Background.**

Plaintiffs are two women, Mary McCormack and Samantha Stabenchek, who worked as cashiers for a Safeway store in Scottsdale, Arizona. McCormack is the mother of Stabenchek. Stabenchek was 17 years old when she started work at Safeway, and appears to have been a minor during the events at issue in this case.

On March 3, 2011, Jose Lopez, a general clerk at the store, cornered Ms. Stabenchek, grabbed her buttocks, and kissed her. Doc. 41, ¶ 15. Plaintiffs allege that the assault was the culmination of months of sexual harassment in which Lopez made inappropriate comments to Stabenchek in the work place and sent her sexually explicit

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

text messages. *Id.*, ¶ 16; Doc. 68, ¶¶ 255-58. After the assault, McCormack reported Lopez's conduct. Stabenchek participated in Safeway's internal investigation of the assault, which led to Lopez's termination on March 26, 2011. *Id.*, ¶¶ 19, 21.

Less than a month after reporting the sexual assault, Plaintiffs were both interviewed about McCormack's alleged violation of Safeway's coupon policy. Doc. 67 at 4. Safeway alleges that in late December 2010, a Safeway security analyst reported that it appeared as though McCormack was violating the company's coupon policies. Doc. 60, ¶¶ 168-70. The analyst allegedly discovered more evidence of coupon abuse, which she reported to a loss prevention investigator in April 2011. *Id.*, ¶ 174. The investigator confronted Stabenchek and McCormack in connection with his investigation. McCormack was suspended pending further investigation. Doc. 59 at 9. Feeling that their honesty was impugned "on the heels" of their reports about Lopez's misconduct, Plaintiffs resigned on April 13, 2011. Doc. 67 at 5.

Stabenchek has asserted sexual harassment and retaliation claims against Safeway under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Arizona Civil Rights Act, A.R.S. §§ 41-1463 and 41-1464 ("ACRA"). McCormack has asserted retaliation claims against Safeway under Title VII and the ACRA.[2]

**II.   Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[2] Safeway moves for summary judgment on all of Plaintiffs' claims, state and federal, but addresses only federal discrimination and retaliation law in its motion. Doc. 59. Plaintiffs likewise limit their arguments to federal law. Doc. 67. The Court therefore will limit its analysis to the federal-law requirements for these claims.

1 matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the
2 outcome of the suit will preclude the entry of summary judgment, and the disputed
3 evidence must be "such that a reasonable jury could return a verdict for the nonmoving
4 party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, the
5 party opposing summary judgment "may not rest upon the mere allegations or denials of
6 [the party's] pleadings, but . . . must set forth specific facts showing that there is a
7 genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
8 586 n.11 (1986); *see* Fed. R. Civ. P. 56(e). If the evidence submitted by the non-moving
9 party is merely colorable or is not significantly probative, summary judgment may be
10 granted. *Anderson*, 477 U.S. at 249-50. Because credibility determinations, the weighing
11 of evidence, and the drawing of inferences from the facts are jury functions, the evidence
12 of the non-movant is to be believed and all justifiable inferences are to be drawn in her
13 favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

14 **III. Harassment Claims.**

15 Title VII provides that an employer may not "discriminate against an individual
16 with respect to [her] compensation, terms, conditions, or privileges of employment
17 because of [her] . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). Sexual harassment constitutes
18 unlawful discrimination under Title VII. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66
19 (1986). If the harassing employee is the victim's co-worker, the employer may be held
20 liable only if it was negligent in controlling working conditions. *Vance v. Ball State*
21 *Univ.*, 133 S.Ct. 2434, 2439 (2013). "In cases in which the harasser is a 'supervisor,'
22 however, different rules apply," and the employer may be held vicariously liable. *Id*.

23                 **A. Vicarious Liability.**

24 Safeway asserts that it cannot be held vicariously liable for Lopez's harassment
25 because Lopez was not Stabenchek's supervisor. Doc. 59 at 11. "[A]n employee is a
26 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered
27 by the employer to take tangible employment actions against the victim." *Vance*, 133
28 S.Ct. at 2439. "The ability to direct another employee's tasks is simply not sufficient" to

give rise to "supervisor" status. *Id*. at 2448. Instead, supervisors are a "*distinct class* of agent [empowered] to make economic decisions affecting other employees under his or her control. . . . Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Id*. (internal quotation marks and citation omitted) (emphasis in original).

Lopez was a front end manager when Stabenchek became an employee at Defendant's Scottsdale location, but he had been demoted to general clerk by the time much of the alleged harassment took place, including the sexual assault. Doc. 60, ¶¶ 78-79, 85, 93. The distinction is not important, however, because neither front end managers nor general clerks qualify as supervisors under *Vance*. Front end managers and general clerks lack authority to make economic decisions affecting other employees under their control. Front end managers and general clerks are not empowered by Safeway to hire, promote, demote, fire, increase pay, decrease pay, or impose any economic change on any employees. Doc. 60, ¶ 78, 93; Doc. 60-2, ¶¶ 20, 24.

Plaintiffs assert that Lopez was Stabenchek's supervisor under *Vance* because he was in charge of the store during some of Stabenchek's shifts and because he sat in on Stabenchek's initial job interview and assured her that she would get her hired. Doc. 67 at 8; *see* Doc. 68, ¶¶ 78.1, 78.2. Plaintiffs have presented evidence that front end managers occasionally directed other employees to sign documents that Safeway "uses to bind their employees." Doc. 68, ¶ 94.1; *see* Doc. 77-1 at 28. In addition, Plaintiffs assert that front end managers are supervisors because they have significant decision-making power, including telling employees when to clock out and when to take breaks. Doc. 68, ¶ 94.3; *see* Doc. 77 at 9. But Plaintiffs have provided no evidence that Lopez had any ability to influence Stabenchek's employment beyond determining the timing of her breaks and the manner in which she performed her job, and *Vance* states that "the ability to direct employee's tasks is simply not sufficient" to justify a finding that a manager is a supervisor for purposes of Title VII vicarious liability. *Vance*, 133 S.Ct. at 2448. *Vance* requires Plaintiffs to show that Lopez had power to make economic decisions affecting

Stabenchek's employment at Safeway such as the ability to fire, hire, promote, or change Stabenchek's compensation. Plaintiffs have presented no evidence that Lopez possessed such authority.

Plaintiffs' reliance on *Lindquist v. Tanner*, No. 2:11-3181, 2013 WL 4441946 (D.S.C. Aug. 15, 2013), is misplaced. The plaintiff in *Tanner* presented evidence that the harasser was able to impact the plaintiff's employment status. The harasser actively recruited the plaintiff because he thought she might be a good fit for the job, multiple sources confirmed that the harasser had stated that he "owned" the plaintiff, one listener interpreted the harasser's statements as implying that he had the ability to determine whether or not plaintiff would become a full-time employee, and the harasser was the most senior employee on-site. *Id*. at *4. Plaintiffs have failed to provide comparable evidence showing that Lopez had the ability to affect Plaintiffs' employment. Plaintiffs rely on evidence that Lopez participated in Stabenchek's hiring process. Safeway has shown, however, that while Lopez sat in on Stabenchek's initial 5-minute screening interview, she was not offered a position at the end of the interview or required to fill out any paperwork. Doc. 60, ¶ 11. After the short interview with Lopez, the hiring decision was made by a different Safeway employee after an hour-long interview. *Id*., ¶¶ 12-13. Stabenchek's unsupported allegations that Lopez played a significant role in her hiring process are insufficient to withstand a motion for summary judgment, particularly in light of Defendant's evidence to the contrary. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586 n. 11. In addition, the fact that Lopez was occasionally the person in charge at Safeway's Scottsdale store is a far cry from the authority required by *Vance*.

Undisputed facts show that Lopez was not Stabenchek's supervisor as a matter of law. As a result, Safeway cannot be held vicariously liable for Lopez's harassment.

### B.   Liability in Negligence.

Where harassment by a co-worker is alleged, the employer can be held liable only if "its own negligence is a cause of the harassment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998). Title VII liability is direct, not derivative. *Swenson v. Potter*,

271 F.3d 1184, 1191 (9th Cir. 2001). Thus, an employer is responsible for its own actions or omissions and not for a co-worker's harassment. "If the employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have 'adopt[ed] the offending conduct and its results, quite as if they have been authorized affirmatively as the employer's policy.'" *Id.* at 1192 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998)).

An employer cannot be held liable for misconduct of which it is unaware, *Swenson*, 271 F.3d at 1192, and the employer's liability runs only from the time it "knew or should have known about the conduct and failed to stop it," *Ellerth*, 524 U.S. at 759. "Notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is 'reasonably calculated to end the harassment.'" *Swenson*, 271 F.3d at 1192 (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 875 (9th Cir. 2001)). "The reasonableness of the remedy depends on its ability to: (1) 'stop harassment by the person who engaged in harassment;' and (2) 'persuade potential harassers to refrain from unlawful conduct.'" *Nichols*, 256 F.3d at 875 (quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)).

Safeway asserts that it cannot be held liable under a negligence theory because, although Stabenchek claims that Lopez had been making hundreds of sexual comments and sending thousands of sexual messages to her for months before the March 3 incident, Stabenchek never told anyone about any alleged harassment until March 5, the day before McCormack reported it to Safeway. Doc. 59 at 13. Plaintiffs rejoin that Safeway can be liable because one of Safeway's managers observed Lopez harassing Stabenchek and did nothing to stop it. Doc. 67 at 9.

In her deposition, Stabenchek admitted that she did not tell anyone about Lopez's inappropriate conduct – including her mother and her boyfriend – until after the sexual assault occurred. Doc. 60-1 at 104-05. Plaintiffs assert, however, that Safeway knew or should have known about Lopez's sexually harassing conduct before he sexually

1  assaulted Stabenchek. Doc. 67 at 3, 9. Stabenchek testified that about one month before
2  the sexual assault, Megan Oxford, a second assistant manager, approached Stabenchek
3  about an incident Oxford had witnessed. Doc. 60-1 at 115. Oxford told Stabenchek that
4  she saw an exchange between Lopez and Stabenchek after which Stabenchek looked at
5  Lopez like she was disgusted. *Id*. Oxford had not heard what Lopez said, but she urged
6  Stabenchek to share anything that Stabenchek thought Oxford needed to know. *Id*. at
7  116. Stabenchek declined to share any specific information with Oxford because she was
8  uncomfortable and embarrassed. Oxford again asked Stabenchek if she wanted to report
9  anything, but Stabenchek responded that Lopez was just being a "creep" and that she did
10 not want to report anything. *Id*. at 139.

11 Oxford's observations, and Stabenchek's subsequent responses to Oxford's
12 questions, did not put Safeway on notice of Lopez's sexually harassing conduct toward
13 Stabenchek. In fact, Stabenchek declined to share the very facts that would have put
14 Safeway on notice that Lopez was engaging in sexual harassment. Although Stabenchek
15 told Oxford that Lopez was being a "creep," that uninformative comment was not enough
16 to communicate that Lopez was sexually harassing Stabenchek.

17 Stabenchek testified in her deposition that the conversation with Oxford occurred,
18 at Oxford's suggestion, in the manager's office, and that Oxford showed Stabenchek
19 something on a computer screen (Stabenchek could not recall what it was) which
20 suggested that Lopez had previously been demoted for sexual harassment. Doc. 60-1 at
21 140-41. Although this testimony could be viewed as evidence that Safeway knew of
22 prior sexual harassment by Lopez, it also suggests that Safeway took action against
23 Lopez for his prior conduct and that Oxford was attempting to ferret out the truth
24 concerning the encounter she saw between Lopez and Stabenchek. The undisputed fact
25 remains that Stabenchek did not tell Oxford what Lopez said or that she was being
26 sexually harassed by him, even after Oxford encouraged her to do so.[3]

---

28 [3] Safeway presents evidence that Lopez was not previously demoted for sexual harassment and had not been the subject of any prior sexual harassment complaints. Doc. 60, ¶ 91. For purposes of this motion, however, the Court takes Stabenchek's

- 7 -

1     Once Safeway actually learned of Lopez's sexually harassing conduct, it took
2 prompt corrective action.  Stabenchek told her mother about the Lopez's harassment on
3 Saturday, March 5.  Doc. 60-1 at 29.  McCormack told second assistant manager Ryan on
4 Sunday, March 6.  *Id*. at 32.  By Monday March 7, the store manager, Anthony Duran,
5 and a human resources advisor, Joyce Cameron, initiated an investigation of the incident.
6 Lopez was interviewed later that day and was immediately suspended pending the results
7 of the investigation.  Doc. 60-3 at 12.  Lopez never returned to work at Safeway and was
8 fired on March 17.  *Id.*

9     Relying on *Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001), Plaintiffs
10 argue that, because Safeway failed to prevent Lopez's sexually harassing conduct aimed
11 at young girls, and because many of Safeway's other employees engaged in similar forms
12 of sexual harassment, Safeway cannot be considered to have enforced its anti-harassment
13 policy in good faith.  Doc. 67 at 9.  In *Swinton*, the plaintiff demonstrated that, in addition
14 to management's knowledge if his harassment, the plaintiff was constantly subjected to
15 racial slurs by co-workers, supervisors, and officers of the defendant corporation.  The
16 Ninth Circuit concluded that the defendant could not be considered to have properly
17 implemented its anti-harassment policy when it was clear that many employees at various
18 levels of management actively participated in the harassment.  Plaintiffs allege that
19 employees and managers at Safeway engaged in sexually charged conversations, jokes,
20 and touching, citing to Stabenchek's deposition.  Doc. 67 at 9; Doc. 68, ¶ 265.

21     The cited testimony does not, however, support an inference of widespread
22 harassment.  Stabenchek testified that she twice saw Lopez slap another female employee
23 on the bottom, but that the woman did not appear to be offended.  Doc. 68, Ex. L at 41-
24 42.  Stabenchek also testified that she heard others making sexual comments, but that
25 "[i]t was just joking" (*id.* at 37), nobody appeared to be offended (*id.* at 38), she was not
26 offended (*id.* at 41), and she never complained about the joking (*id.*).  To constitute

27

28 testimony regarding the information on the computer screen as true.  *Anderson*, 477 U.S. at 255.

- 8 -

harassment, sexual conduct or statements must be unwelcome. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). Stabenchek's testimony suggests that the joking she observed was not unwelcome, and the Court cannot conclude that joking which does not amount to harassment is sufficient to have put Safeway on notice that harassment was occurring in its store or being perpetrated by Lopez.

The Court concludes that Plaintiff has not presented evidence from which a rational jury could find Safeway liable for harassment under a negligence theory. The Court will therefore enter summary judgment on the harassment claims.

**IV.  Retaliation Claims.**

Plaintiffs allege that Safeway terminated their employment in retaliation for the reporting of Lopez's sexual harassment. Under § 704 of the Civil Rights Act of 1964, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3 (2000). To make out a *prima facie* case of retaliation, a plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1196-97 (9th Cir. 2003). The Supreme Court has held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*.

Under *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973), once Plaintiffs make out a *prima facie* case of retaliation, "the burden shifts to [Safeway] to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Manatt v.*

- 9 -

*Bank of Am., N.A.*, 339 F.3d 792, 800 (9th Cir. 2003). If Safeway articulates such a reason, Plaintiffs "bear[] the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id*. (internal quotation marks and citation omitted).

### A. Stabenchek's Retaliation Claim.

Plaintiffs allege that Stabenchek was constructively discharged. Doc. 67 at 13. In a harassment case, a plaintiff must show harassing behavior "sufficiently severe or pervasive to alter the conditions of [their] employment." *Meritor*, 477 U.S. at 67. To establish constructive discharge, "the plaintiff must make a further showing: [s]he must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004).

Stabenchek does not provide adequate evidence to sustain a claim of constructive discharge. Stabenchek testified in her deposition that she was very uncomfortable working at Safeway after the incident with Lopez because of the way her co-workers looked at her and because of what she imagined they were thinking. Doc. 60-1 at 121-22. Stabenchek admitted, however, that no one at Safeway confronted her about the incident with Lopez or suggested that she should not have complained. *Id*. In fact, she stated that no one broached the subject of Lopez's termination or his assault at all. *Id*. Stabenchek was questioned about misuse of coupons, but she was never subjected to any form of discipline.

Title VII does not embody a "general civility code." *Faragher*, 524 U.S. at 788. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id*. Where Stabenchek does not even allege teasing, offhand comments, or any concrete examples of retaliation, the Court must conclude that Safeway's conduct did not create an abusive working environment so intolerable as to justify her resignation. *Suders*, 542 U.S. at 134; *see also Manatt*, 339 F.3d at 803 ("Mere ostracism in the workplace is not grounds for a retaliation claim[.]").

1       The Court finds that no reasonable juror could conclude that Stabenchek was constructively discharged. Summary judgment will therefore be entered on her retaliation claim. *Anderson*, 477 U.S. at 248.

### B. McCormack's Retaliation Claim.

Safeway argues that McCormack has failed to establish a *prima facie* case of retaliation because she cannot demonstrate a causal nexus between protected conduct and an adverse employment action. Doc. 59 at 2; Doc. 79 at 10. Safeway also argues that even if the Court finds that McCormack has established a *prima facie* case, it has articulated legitimate, nondiscriminatory reasons for the employment action taken against her. Doc. 59 at 16; Doc. 79 at 12. Because the Court finds that McCormack failed to demonstrate a causal nexus, the Court need not reach Safeway's second argument.

      McCormack argues that the temporal proximity between the coupon investigation and her complaint against Lopez is sufficient evidence to establish the third element of her *prima facie* case. Doc. 67 at 15. "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003). The Ninth Circuit has held that an eighteen-month gap is too long to support a finding of causation based on timing alone. *Villiarimo*, 281 F.3d at 1065. But the Ninth Circuit has found a *prima facie* case of causation when adverse employment action occurred fifty-nine days after an EEOC hearing. *Miller v. Fairchild Indus, Inc.*, 885 F.2d 498, 505 (9th Cir. 1989).

      McCormack makes much of the timing of Safeway's coupon investigation. She argues that "[t]he tight time correlation between Plaintiffs reporting Lopez's conduct and Safeway's initiation of an investigation . . . is far more than adequate to overcome summary judgment." Doc. 67 at 16. Although the 36-day period between McCormack's complaint and her subsequent suspension is certainly relevant circumstantial evidence of retaliation, it is important to emphasize that "it is causation, not temporal proximity itself, that is an element of [McCormack's] prima facie case, and temporal proximity merely

1 provides an evidentiary basis from which an inference can be drawn." *Porter v. Cal. Dept. of Corrections*, 419 F.3d 885, 895 (9th Cir. 2004) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997)). In order to demonstrate a causal connection, McCormack must demonstrate that the Safeway employees who initiated the coupon investigation were aware that she had engaged in protected activity. *See Raad*, 323 F.3d at 1197 (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982)).

McCormack has failed to show that Ashley Shrewsbury, the security analyst who discovered and reported McCormack's alleged coupon violations in December 2010 and April 2011, or Austin Wolfe, the loss prevention investigator who investigated the alleged coupon violations, knew that McCormack had engaged in protected activity. Shrewsbury and Wolfe have both submitted sworn declarations that they were not aware of McCormack's complaint about Lopez. Doc. 60-3 at 32; Doc. 60-3 at 48. McCormack's only response is an unsupported assertion that "it is ridiculous for Safeway to assert that the investigators would not have reviewed Ms. Stabenchek's and Ms. McCormack's personnel files before pursuing their investigation. Those files surely would have had documentation about [the Lopez incident]." Doc. 67 at 17. But mere argument is not enough to defeat summary judgment, and McCormack provides no evidence that either Shrewsbury or Wolfe knew she had engaged in protected activity. She provides no evidence concerning the contents of personnel files or that they ever reviewed such files. Nor has she submitted evidence that internal investigators such as Shrewsbury or Wolfe had any other way to discover an employee's complaints about sexual harassment.

The Court concludes that no reasonable juror could find that McCormack could establish her *prima facie* case. Accordingly, the Court will grant Safeway summary judgment on these claims. *Anderson*, 477 U.S. at 248.

1    **IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 59) is
2 **granted**. The Clerk shall terminate this action.
3    Dated this 12th day of February, 2014.

David G. Campbell
United States District Judge